UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ISAIAH BROWN,<br><br>        Plaintiffs,<br><br>    v.<br><br>ELK GROVE UNIFIED SCHOOL DISTRICT,<br><br>        Defendant. | No.  2:17-CV-00396-KJM-DB<br><br><u>ORDER</u> |

This ADA case arises out of a dispute between plaintiff Isaiah Brown, who is an individual with a disability, and his school district over plaintiff's desire to play on the varsity basketball team at three separate high schools.  Defendant Elk Grove Unified School District ("the District") moves for summary judgment of plaintiff's remaining claims.  Mot. for Summ. J. ("Mot."), ECF No. 49.  Brown opposes, Pl.'s Am. Opp'n, ECF No. 53, and the District has filed a reply, Def.'s Reply, ECF No. 55.  On November 22, 2019, the court heard oral argument on this motion.  For the reasons set forth below, the District's motion is DENIED.

I.      FACTUAL AND STATUTORY BACKGROUND

        A.      <u>Factual Background</u>

            This case arises from plaintiff's efforts to play on the varsity basketball team at three high schools within the District during the 2014-2015 and 2015-2016 school years.  First

Am. Compl. ("FAC"), ¶ 5.  During the 2014-2015 school year, his junior year of high school, plaintiff attended Franklin High School ("FHS").  *Id.*  During the 2015-2016 school year, his senior year, he attended both Cosumnes Oaks High School ("COHS") and Pleasant Grove High School ("PGHS").  *Id.*  Plaintiff's Individualized Education Plan ("IEP") and Behavior Intervention Plan ("BIP") with the District identify his disability as emotional disturbance, which "causes him to become angry and defiant" and "manifests in emotional outbursts with swearing and yelling."  *Id.* ¶ 8; *see also* Decl. of Doug Phillips (District Special Education Director) Ex. 10, ECF No. 49-9 at 8–9 (plaintiff's IEP).  In 2014, while plaintiff was attending FHS, he claims he was not provided the "full try-out period" and was "excluded from the school's summer basketball program" because of his disability.  *Id.* ¶ 9.  Plaintiff transferred to COHS prior to his senior year and alleges coaches there also excluded him from participating in varsity basketball because of his disability.  *Id.* ¶¶ 10–15.  Later in 2015, plaintiff transferred to PGHS, where school officials did not allow him to participate in a late tryout for the varsity basketball team.  *Id.* ¶¶ 18–19.  The record as relevant to the District's motion relates to events at each of the three schools; subsequent conversations between plaintiff, plaintiff's mother and school officials; as well as conversations leading up to the tryouts at each school.

Defendant has submitted a statement of material facts.  *See* Def.'s Statement of Facts ("DF"), ECF No. 49-2.  These facts are supported in part by declarations from District officials who interacted with plaintiff and his mother.  *See* Decl. of Chantelle Albiani ("Albiani Decl."), ECF No. 49-4 (principal of FHS, which plaintiff attended during 2014-2015 school year); Decl. of Bruce Belden ("Belden Decl."), ECF No. 49-5 (athletic director of PGHS, which plaintiff attended during 2015-2016 school year); Decl. of Dale R. Edmiston ("Edmiston Decl."), ECF No. 49-6 (District's athletic director); Decl. of Jesse Formaker ("Formaker Decl."), ECF No. 49-7 (basketball coach at FHS, which plaintiff attended during 2014-2015 school year); Decl. of Christopher Hoffman ("Hoffman Decl."), ECF No. 49-8 (District Superintendent); Decl. of Doug Phillips ("Phillips Decl."), ECF No. 49-9; Decl. of Elizabeth Rayner ("Rayner Decl."), ECF No. 49-10 (Program Specialist for Special Education services in District); Decl. of Patrick Roth ("Roth Decl."), ECF No. 49-11 (boys' varsity basketball head coach at COHS for 2015-2016

1   year, when plaintiff attended); Decl. of Dwayne Smith ("Smith Decl."), ECF No. 49-12 (boys'

2   varsity basketball head coach at PGHS, which plaintiff attended during 2015-2016 school year).

3   Defense counsel also has provided transcripts of plaintiff's depositions, Ex. 19, Ex. 20, as well as

4   depositions of plaintiff's mother, Ex. 21, Ex. 22, the basketball coach at FHS, Ex. 23, and the

5   basketball coach at COHS, Ex. 24. *See* Decl. of Dominic Spinelli ("Spinelli Decl."), ECF No. 49-

6   3 (counsel for District).

7          Plaintiff has responded to defendant's statement of material facts. Pl.'s Resp. to

8   Def.'s Statement of Facts ("PRDF"), ECF No. 54. Plaintiff relies on answers in his own

9   deposition, as well as his mother's and his coaches' depositions, in disputing defendant's material

10  facts. *See generally* PRDF. Plaintiff also relies on deposition testimony from non-retained expert

11  witnesses, Michael Walker and Glen Basped, Sr., who previously coached plaintiff. *See* Decl. of

12  Damien Troutman ("Troutman Decl.") Ex. G, ECF No. 45-1 (Coach Walker's deposition

13  testimony); *id.* Ex. H, ECF No. 45-1 (Coach Basped's deposition testimony). Plaintiff also

14  objects to portions of defendant's statement of material facts. *See generally* PRDF.

15         Defendant has replied to plaintiff's responses. *See* Def.'s Reply to Pl.'s Resp.

16  ("DRPR"), ECF No. 55-3; Def.'s Resp. to Pl.'s Obj., ("DRPO"), ECF No. 55-4. Defendant also

17  objects to some of the evidence on which plaintiff's opposition relies. *See* Def.'s Obj. to Pl.'s

18  Opp'n, ECF No. 55-1.

19         The court addresses objections in the discussion below to the extent required to

20  properly resolve the District's motion. In reaching its conclusions here, the court does not rely on

21  any evidence for which it is sustaining an objection.

22         B.   Procedural Background

23         Plaintiff filed suit against the District in Sacramento County Superior Court on

24  November 8, 2016. Not. of Removal, ECF No. 1, at 1; *see also* Not. of Removal Ex. A

25  (plaintiff's state court complaint). The District removed the case to this court on February 23,

26  2017. *Id.* at 2. Plaintiff filed an amended complaint on April 14, 2017, in which he asserted the

27  following: (1) violation of Title II of the Americans with Disabilities Act (ADA), FAC, ECF No.

28  7, ¶¶ 27–36; (2) violation of § 504 of the federal Rehabilitation Act of 1973, *id.* ¶¶ 37–44;

(3) violation of the implementing regulations of the Rehabilitation Act, which require an equal opportunity for handicapped students to participate in a school's services and activities, *id.* ¶¶ 45–52; (4) negligence with respect to the District's duty of care to provide plaintiff equal access, *id.* ¶¶ 53–58; and (5) negligence per se for defendant's failure to follow the implementing regulations of the Rehabilitation Act, *id.* ¶¶ 59–65.  The parties later stipulated to dismissal of plaintiff's negligence and negligence per se claims.  Stip., ECF No. 8.

Two years of litigation followed.  The District filed a motion to dismiss all of plaintiff's claims, Mot. to Dismiss, ECF No. 9, and then this court stayed the action until the parties completed settlement discussions, Minute Order, ECF No. 11.  When the case did not settle, the court lifted the stay and heard defendant's motion to dismiss on November 3, 2017.  *See* Minute Order, ECF No. 19; Hr'g Minutes, ECF No. 21.  The court denied in full the District's motion to dismiss on February 20, 2018, Order, ECF No. 25, and the District then filed its answer, Answer, ECF No. 26.

Defendants filed the instant motion for summary judgment on September 24, 2019.  The District argues as a threshold matter the court should dismiss plaintiff's claims for failure to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA").  Mem. P. & A., ECF No. 49-1, at 13–16.  The District also claims plaintiff cannot establish a disability discrimination claim under the ADA and § 504 of the Rehabilitation Act because: (1) the decision not to select plaintiff for the varsity team in both the 2014-2015 and the 2015-2016 seasons was not due to his disability, *id.* at 18–20; (2) the decision to not offer a late tryout at PGHS was also not the result of plaintiff's disability, *id.* at 20–21; (3) the District did not act with deliberate indifference, *id.* at 21–23; and (4) the District did not violate the implementing regulations of Section 504 of the Rehabilitation Act, *id.* at 23–24.

C.    Statutory Background

The court reviews the relevant parts of the applicable statutes below.

1.    The IDEA

The IDEA provides procedural safeguards and requirements for the provision of a free and appropriate public education ("FAPE") to students with a qualifying disability.  Students

4

1    who qualify for special education services will receive an IEP and BIP in accordance with the

2    IDEA.  §§ 1414–1415(k).  School districts are to resolve disputes regarding a BIP or an IEP using

3    a mediation process; any disputes the mediation process does not resolve requires an impartial

4    due process hearing, and students may appeal the results of these hearings, known as local

5    education agency hearings, to a state educational agency.  20 U.S.C. § 1415(e)–(g).  The IDEA

6    provides none of its procedural safeguards "shall be construed to restrict or limit the rights,

7    procedures, and remedies available under the Constitution, the Americans with Disabilities Act of

8    1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of

9    children with disabilities."  20 U.S.C. § 1415(l).  An exhaustion requirement limits this clause,

10    such that if a plaintiff files a civil action under any of the other laws identified in the statute

11    "seeking relief that is also available" under the IDEA, the plaintiff must exhaust the IDEA

12    procedures—mediation, impartial due process hearing, appeal to state agency—"to the same

13    extent as would be required had the action been brought under this subchapter [of the IDEA]."

14    20 U.S.C. § 1415(l).

15                **2.**         <u>The ADA and § 504 of the Rehabilitation Act</u>

16           Title II of the ADA provides: "No qualified individual with a disability shall, by

17    reason of such disability, be excluded from participation in or be denied the benefits of the

18    services, programs, or activities of a public entity, or be subjected to discrimination by any such

19    entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act provides: "No otherwise

20    qualified individual with a disability . . . shall, solely by reason of her or his disability, be

21    excluded from the participation in, denied the benefits of, or be subjected to discrimination under

22    any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  Given their

23    similarity, the court treats the two statutory schemes as one and evaluates them under a single

24    framework in the analysis below.  *See Zukle v. Regents of University of California*, 166 F.3d

25    1041, 1045 n.11 (9th Cir. 1999).

26    **II.**     <u>LEGAL STANDARD</u>

27           A court will grant summary judgment "if . . . there is no genuine dispute as to any

28    material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Where a genuine dispute exists, the court draws reasonable inferences in favor of the non-moving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v.*

1   *Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  If the opposing party objects to the

2   proposed evidence, the party seeking admission must direct the district court to "authenticating

3   documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or

4   other evidentiary principles under which the evidence in question could be deemed admissible

5   . . . ."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).  However, courts are

6   sometimes "much more lenient" with the affidavits and documents of the party opposing

7   summary judgment.  *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

8           The Supreme Court has taken care to note that district courts should act "with

9   caution in granting summary judgment," and have authority to "deny summary judgment in a case

10  where there is reason to believe the better course would be to proceed to a full trial."  *Anderson*,

11  477 U.S. at 255.  A trial may be necessary "if the judge has doubt as to the wisdom of terminating

12  the case before trial."  *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507

13  (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)).  This may be

14  the case "even in the absence of a factual dispute."  *Rheumatology Diagnostics Lab., Inc. v.*

15  *Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22

16  F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

17  III.   <u>DISCUSSION</u>

18        A.    <u>ADA (First Claim) and Rehabilitation Act (Second Claim)</u>

19               1.    <u>Exhaustion Requirement</u>

20           As a threshold matter, the court addresses whether plaintiff failed to exhaust

21  administrative remedies under the IDEA.  Mem. P. & A. at 13–16.  The District argues plaintiff

22  needed to exhaust administrative remedies under the IDEA prior to filing this ADA complaint

23  because his complaint cannot be "transplanted into some context aside from an educational

24  setting."  *Id.* at 15.  In opposition, plaintiff asserts his claims do not require exhaustion because he

25  seeks monetary damages, "which are not available under the IDEA."  Opp'n at 17 (quoting *E.H.*

26  *v. Brentwood Union Sch. Dist.*, No. C13-3243 TEH, 2013 WL 5978008, at *5 (N.D. Cal. Nov. 4,

27  2013) (citing *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 936 (9th Cir. 2007)).

28  /////

7

1          As noted above, the IDEA provides in pertinent part "that before the filing of a

2   civil action under such laws seeking relief that is also available under this part, the procedures

3   under [20 U.S.C. § 1415] subsections (f) and (g) shall be exhausted to the same extent as would

4   be required had the action been brought under this subchapter."  20 U.S.C. § 1415(l).  Whether a

5   plaintiff seeks relief also available under the IDEA and therefore must meet "§ 1415(1)'s

6   exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public

7   education."  *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017).  For example, when a denial

8   of FAPE also violates the Rehabilitation Act, "plaintiff must first submit her case to an IDEA

9   hearing officer."  *Id.*  To determine when a plaintiff is seeking relief for the denial of a FAPE,

10  courts must look "to the 'substance' of, rather than the labels used in, the plaintiff's complaint . . .

11  or, in legal speak, the gravamen—of the plaintiff's complaint."  *Id.* at 755 (citations omitted).  In

12  this inquiry, courts must answer the following questions: "First, could the plaintiff have brought

13  essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a

14  school—say, a public theater or library? And second, could an *adult* at the school—say, an

15  employee or visitor—have pressed essentially the same grievance?"  *Id.* at 756 (emphases in

16  original).

17         Here, the District contends plaintiff's complaint is "an attempt to seek relief that

18  would have been the subject of an IDEA due process complaint."  Mem. P. & A. at 14 (citing

19  DSDF 3, 26).  In so doing, the District points to declarations recounting demands from plaintiff's

20  mother that his "IEP reflect an offer of FAPE that mandated his participation with a varsity

21  basketball team."  Mem. P. & A. at 15 (citing Phillips Decl. ¶¶ 1–3, 5–16 (District Special

22  Education Director describing requests from plaintiff's mother, both informally and during an IEP

23  meeting, that District allow plaintiff to become member of varsity basketball team at each high

24  school as part of his IEP); Rayner Decl. ¶¶ 1–3, 5–13 (Special Education Program Specialist also

25  describing requests from plaintiff's mother that District allow plaintiff to become member of

26  varsity basketball team at each high school); and Hoffman Decl. ¶¶ 1–5 (District Superintendent

27  describing meetings and communications with plaintiff's mother in which he advised her the

28  District was not obligated to permit plaintiff's participation on any varsity basketball team as part

8

1  of his IEP)).  The District also highlights deposition testimony from plaintiff's mother on this

2  issue.  *See* Spinelli Decl. Ex. 21 ("Henry Dep. I") at 102:18–104:08 (Plaintiff's mother stating, "I

3  discussed adding a reasonable accommodation into his IEP, which requested that they input that

4  Isaiah having the ability to play basketball helps him to maintain academic and emotional

5  success, which is a benefit for him."); Spinelli Decl. Ex. 22 ("Henry Dep. II") at 183:09–17

6  (plaintiff's mother identifying language in a letter that purportedly would have allowed her son to

7  "be afforded the equal opportunity as a student with a learning disability," per IDEA), 184:07–

8  185:06 (discussion of how plaintiff's mother requested this language be included in his IEP

9  during his sophomore year), 185:20–186:02 (discussion of when plaintiff's mother made these

10 requests).  Based on these sworn statements, from both District officials and plaintiff's mother,

11 which reveal discussions about plaintiff's disability as related to plaintiff's possible inclusion on

12 the varsity basketball team, the District reasons the gravamen of plaintiff's complaint seeks relief

13 for denial of a FAPE; the District argues plaintiff could not bring claims related to a varsity

14 basketball team against a public theater or library and an adult employee or visitor also could not

15 bring these claims against the District.  Mem. P. & A. at 15.  Plaintiff disputes that his ADA and

16 Rehabilitation Act claims necessitated meeting the IDEA's exhaustion requirement.  As noted,

17 plaintiff seeks only monetary damages, a remedy "not available under the IDEA," and so the

18 exhaustion requirement in 20 U.S.C. § 1415(l) does not apply.  *E.H.*, 2013 WL 5978008, at *5

19 ("Following the relief-centric approach outlined in *Payne*, because Plaintiff does not seek relief

20 available under the IDEA, he was not obligated to exhaust his IDEA remedies."); *see also*

21 20 U.S.C.A. § 1400(d)(1)(A).

22          Even if plaintiff sought relief available under the IDEA, he would not need to meet

23 the exhaustion requirement because his complaint does not seek "to enforce rights that arise as a

24 result of a denial of a free and appropriate public education [FAPE]."  *Payne v. Peninsulas Sch.*

25 *Dist.*, 653 F.3d 863, 875 (9th Cir. 2011).  Nowhere in plaintiff's complaint does he allege the

26 District failed to provide him with a FAPE or failed to modify his IEP; instead, plaintiff alleges

27 the district "'intentionally excluded [him] […] from two school programs or activities […] solely

28 on the basis of [his] disability.'"  Opp'n at 18 (citing 34 C.F.R. § 104.37(a)(1)).

1          As plaintiff's counsel maintained at hearing, an adult employee or visitor could

2   allege a similar claim in the collegiate context.  Because his claims have "'little to do' with the

3   provision of strictly 'educational services,'" he could have brought them against "any public

4   facility."  *Duncan v. San Dieguito Union High Sch. Dist.*, No. 3:18-CV-00321-BEN-BLM, 2019

5   WL 4016450, at *4 (S.D. Cal. Aug. 26, 2019) (quoting *Fry*, 137 S. Ct. at 755)).  Therefore,

6   because plaintiff's injuries involve questions of exclusion and access as opposed to those which

7   are "educational in nature," the gravamen of his complaint does not implicate the IDEA.

8          The District's pointing to plaintiff's mother's advocacy during IEP meetings does

9   not alter this conclusion.  As the District's own evidence shows, it had never planned to guarantee

10  plaintiff a place on the varsity basketball team as part of an IEP.  For example, EGUSD Special

11  Education Director Phillips' states in his declaration, "EGUSD does not offer placement on or

12  any manner of participation with, competitive sports teams, including Varsity Basketball Teams,

13  as part of an offer of [FAPE].  At no time did any of Isaiah Brown's IEP's [sic] include an offer

14  of FAPE that entailed guaranteed placement or participation with a competitive sports team."

15  Phillips Decl. ¶ 3; *see also* Edmiston Decl. ¶¶ 3–9 (Athletic Director describing his investigation

16  of tryout process for 2015-2016).

17         As the statements of Special Education Director Phillips and Athletic Director

18  Edmiston show, the process available to plaintiff here would have offered plaintiff no redress.

19  "[C]ourts universally recognize that parents need not exhaust the procedures set forth in

20  20 U.S.C. § 1415 where resort to the administrative process would be either futile or inadequate."

21  *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992).  If plaintiff had pursued

22  the available procedures, doing so would have been "either futile or inadequate," given that he did

23  not seek a change in academic placement or special academic instructions.  Opp'n at 18–19

24  (citing *K.M. by & through Markham v. Tehachapi Unified Sch. Dist.*, No. 1:17-CV-01431-LJO-

25  JLT, 2018 WL 2096326, at *9 (E.D. Cal. May 7, 2018)).  Moreover, a claim under the ADA or

26  Rehabilitation Act "is not 'precluded or waived based on a parent's consent to an IEP,' [ ] at least

27  where the issue is one that requires specialized expertise a parent cannot be expected to have."

28  *A.G. v. Paradise Valley Sch. Dist.*, 815 F.3d 1195, 1205 (9th Cir. 2016) (quoting *J.W. ex rel.*

*J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 447 (9th Cir. 2010)).  Plaintiff's mother did not have "specialized expertise" and plaintiff's current counsel did not represent the mother when she advocated for her son through the IEP process.

In sum, both the remedies sought and the allegations in plaintiff's complaint demonstrate he was not required to exhaust remedies available under the IDEA.  The court next turns to the merits of plaintiff's claims under the ADA and the Rehabilitation Act.

2.    Merits of ADA and Rehabilitation Act Claims

As to each of his alleged ADA violations, plaintiff has offered sufficient evidence to establish a triable question of fact precluding summary judgment, as summarized below.

Under the dual ADA and Rehabilitation Act analysis, a plaintiff must show: "(1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of [his] disability."  *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  The parties agree plaintiff was a qualified individual with a disability and he was excluded from participating in varsity basketball teams in the District; the court thus addresses only the third element here.

a)    Admissibility of Evidence

The court first addresses defendant's objections to the evidence plaintiff relies on in his opposition, to the extent necessary to clarify the record on this motion.  *See generally* Def.'s Obj. to Pl.'s Opp'n.

Courts are generally "much more lenient" with the affidavits and documents of the party opposing summary judgment, here plaintiff.  *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).  Additionally, "admissibility at trial" depends not on the form of evidence, but on its content.  *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324).

The District objects to some of the testimony plaintiff provided at deposition.  Def.'s Obj. to Pl.'s Opp'n at 1–10.  Certain of these excerpts comprise plaintiff's answers to questions regarding his previous experiences playing basketball, including prior to the 2014-2015

1   school year, as well plaintiff's discussion of his disability.  *Id.* at 1 (citing Brown Dep. I 140:1–7);

2   *id.* at 2 (citing Brown Dep. I 140:17–21); *id.* at 3 (citing Brown Dep. I 202:10–12; 170:11–19;

3   170:20–15 [sic]); *id.* at 4 (citing Brown Dep. I 144:22–145:7; 61:1–13); *Id.* at 5 (citing Brown

4   Dep. I 61:24–62:13); *id.* at 6 (citing Brown Dep. I, 163:17–164 [sic]; 161:18–163:9); *id.* at 7

5   (citing Brown Dep. I 201:12–202:12); *id.* at 8 (citing Brown Dep. I 204:5–9); *id.* at 9 (citing

6   Brown Dep. I 204:10–15; 204:16–205:23).  The District objects to this testimony as irrelevant

7   under Federal Rules of Evidence 401 and 402; the District also argues it lacks foundation because

8   plaintiff "has failed to provide evidence of one or more facts, upon which the existence or

9   nonexistence of which the admissibility of the evidence depends," relying on Rules 602 and 702.

10  *Id.*  In some respects, the District objects on grounds of speculation.  *Id.* (objections 12-14).  The

11  court disagrees.  Plaintiff's previous experiences are relevant to whether the decision to exclude

12  him from participation in varsity basketball was the result of his skills or his disability; the

13  factfinder can determine how much weight to give plaintiff's testimony.  Regarding whether

14  plaintiff's testimony in some instances lacks foundation, such an issue is easily resolved at a later

15  stage, with foundational issues likely curable at trial and any sustaining on grounds of speculation

16  immaterial to the analysis here.  The court OVERRULES the District's evidentiary objection Nos.

17  1–14.

18          The District also objects to any testimony provided at deposition by Coach Basped

19  and Coach Walker, claiming plaintiff did not properly disclose them as experts and their

20  testimony is not relevant under Rules 401 and 402.  Def.'s Obj. to Pl.'s Opp'n at 11–31 (making

21  objections on grounds of relevance, foundation and in some cases speculation).  As the court

22  discussed with counsel at hearing, both Coach Basped and Coach Walker were non-retained

23  experts; plaintiff did not need to disclose them or describe the scope of their opinions.  *See* Fed.

24  R. Civ. P. 26(a)(2)(B).  Moreover, both coaches provide testimony relevant to resolving the case

25  because their opinions of plaintiff's basketball skills based on personal observation could help

26  prove or disprove whether plaintiff's disability served as the "motivating factor" behind the

27  decision to not allow him to play on the District's varsity basketball teams.  The court

28  OVERRULES the District's evidentiary objection Nos. 15–30.

1   Having clarified the record, the court turns to analyze the substance of defendant's

2   arguments on these claims.

3                b)      Exclusion from Participation in FHS and COHS Varsity Basketball

4   A plaintiff must show any exclusion from participation in, denial of benefits, or

5   discrimination by a public entity "was by reason of his disability." *Weinreich v. Los Angeles*

6   *Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (citing 42 U.S.C. § 12132).  Under

7   the ADA, the exclusion must be partially based on a plaintiff's disability, while under the

8   Rehabilitation Act it must be solely based on the plaintiff's disability.  *Lovell*, 303 F.3d at 1052

9   (citations omitted).  Despite this distinction, the court still treats both statutory schemes as one

10  and evaluates them together below.  *Zukle*, 166 F.3d at 1045 n.11.

11  The District meets its initial burden of pointing to evidence showing it did not

12  exclude plaintiff from participation in varsity basketball at FHS and COHS on account of his

13  disability.  Specifically, the District provides sworn declarations describing plaintiff's tryout

14  performances at FHS and COHS, the process of those tryouts, and the follow-up investigations

15  after plaintiff did not make each team.  Coach Formaker avers plaintiff's poor performance during

16  tryouts, rather than any disability, disqualified him from the FHS varsity basketball team during

17  the 2014-2015 school year; Coach Roth said the same regarding the varsity basketball team at

18  COHS during the 2015-2016 school year.  *See* DSDF 9 (citing Formaker Decl. ¶ 5 (FHS coach

19  describing how plaintiff's "lack of lateral defensive quickness, a lack of perimeter skills and a

20  lack of ball handling skills" informed his decision not to allow plaintiff on 2015-2016 varsity

21  basketball team); *id.* 17 (citing Roth Decl. ¶¶ 2–6 (COHS coach describing plaintiff's difficulty

22  executing sets and plays, along with excessive number of attempts to make shots, as informing

23  coach's decision to not allow plaintiff on 2015-2016 varsity basketball team)).  Coach Roth and

24  Coach Formaker also made similar statements in their depositions, transcripts of which defendant

25  has provided to the court.  *See* Spinelli Decl. Ex. 24 ("Roth Dep.") at 29:05–30:02, 37:20–38:06

26  (excerpts from Roth deposition regarding plaintiff's basketball skills); Spinelli Decl. Ex. 23

27  ("Formaker Dep.") at 21:21–22:12, 27:18–28:02 (excerpts from Formaker deposition regarding

28  plaintiff's basketball skills).  Defendant's evidence regarding the process followed during tryouts

1    further supports the District's position that it allowed plaintiff the same opportunities as other

2    players.  *See* Formaker Decl. ¶ 4 (describing three two-hour tryout sessions for FHS 2014-2015

3    varsity basketball team during which coaches observed players running drills and participating in

4    scrimmages); Roth Decl. ¶ 4 (describing same for COHS 2015-2016 varsity basketball team).

5              After plaintiff did not make either team at FHS or COHS, defendant investigated

6    whether the coaches discriminated against or excluded plaintiff because of his disability.  The

7    District concluded the coaches did not discriminate against plaintiff.  The investigations at least

8    support the conclusion the District sought to determine whether the coaches based their decisions

9    on plaintiff's disability, rather than just assume they did not.  *See* Albiani Decl. ¶¶ 4–9 (FHS

10   principal's description of her investigation into whether Coach Formaker discriminated against

11   plaintiff during tryouts for 2014-2015 season); Edmiston Decl. ¶¶ 2–9 (District Athletic Director

12   Edmiston's investigation following plaintiff's tryout at COHS during 2015-2016 school year "did

13   not substantiate that Isaiah Brown was subjected to discrimination by Coach Roth on the basis of

14   Isaiah's disability.").  Collectively, this evidence meets the District's initial burden of showing

15   there is no dispute regarding why the District excluded plaintiff from participating in varsity

16   basketball.

17             The burden thus shifts to plaintiff, who meets this burden by raising a genuine

18   dispute regarding whether the District excluded him from participating in varsity basketball

19   because of his disability.  With respect to his basketball skills generally, plaintiff disputes the

20   District's assessment and provides testimony from two coaches, non-retained expert witnesses,

21   who previously watched plaintiff play basketball.  PRDF 24 (citing Walker Dep. at 49:14–50:14,

22   65:16–66:18, 84:13–86:11, 92:03–94:11, 96:20–100:06 (coach with 20-year career describing

23   plaintiff's talent through plaintiff's participation in his basketball organization, Showtime

24   Hoops)); *id.* (citing Basped Dep. at 138:23–140:12 (describing his basketball career and

25   observations of plaintiff at two camps for "top kids in Northern California," as well as plaintiff's

26   qualifications for varsity basketball)).  The testimony of Coach Walker and Coach Basped

27   contradicts that of Coach Formaker and Coach Roth.  Furthermore, plaintiff points to evidence

28   from which the factfinder could conclude the behavior of Coach Formaker and Coach Roth

14

leading up to and during tryouts demonstrates they were aware of plaintiff's disability and sought to antagonize him. *See* Brown Dep. II at 270:07–271:04, 271:19–273:16 (recounting Coach Formaker's "yelling and screaming and cussing" to plaintiff during tryouts); *id.* at 296:25–299:24, 300:16–301:12, 302:12–303:03, 303:10–304:13 (describing Coach Roth's calling plaintiff by the wrong name "Elijah throughout summer league," and how plaintiff "felt that he doing [sic] it to be disrespectful."). FHS Principal Albiani acknowledged that through her investigation, she "substantiated that inappropriate language was used by Coach Formaker," although she "was unable to substantiate specific verbiage used." Albiani Decl. ¶ 10.

Viewing all the evidence and drawing all inferences in favor of the nonmoving party, the court finds plaintiff has raised triable issues of fact regarding his performance during tryouts and his overall basketball skills. These facts are material to plaintiff's ADA and Rehabilitation Act claims because if plaintiff had the requisite skills to play varsity basketball, but the District denied him the opportunity to do so because of his disability, he will prevail on these claims. It is for a jury to discern whether plaintiff's disability or lack of skills served as the "motivating factor" for his exclusion from participation in varsity basketball. *See Martin v. California Dept. of Veterans Affairs*, 560 F.3d 1042, 1048 (9th Cir. 2009) ("That is, if the evidence could support a finding that there is more than one reason for an allegedly discriminatory decision, a plaintiff need show only that discrimination on the basis of disability was a 'motivating factor' for the decision.") (citations omitted).

The court DENIES the District's motion for summary judgment of plaintiff's claims the District violated his rights under the ADA and the Rehabilitation Act by excluding him from the varsity basketball teams at FHS and COHS.

c)      Exclusion from Participation in PGHS Varsity Basketball

The District argues Coach Smith's decision to move forward with his varsity basketball team at PGHS and not provide plaintiff a late tryout was the result of "legitimate non-discriminatory reasons." Mem. P. & A. at 20 (citing DSDF 23). Coach Smith avers any late tryout "would have been very difficult as a practical matter to give a single student a tryout, and it would have been unfair to the student, the team, and the other individuals who had been cut from

1  the team during the regular tryout window."  Smith Decl. ¶ 4.  This decision "was left to" Coach

2  Smith and District officials "in no way attempt[ed] to persuade" Coach Smith to prevent a late

3  tryout.  *Id.*  Director Edmiston avers, "at no time did I ever state Isaiah Brown would be

4  guaranteed a late tryout for the PGHS boys' varsity basketball team."  Edmiston Decl. ¶ 13.  With

5  these sworn declarations, the District meets its initial burden of pointing to evidence it did not

6  exclude plaintiff from participating in PGHS's varsity basketball team because of his disability.

7          While plaintiff points only to excerpts of his own deposition on this issue, in doing

8  so he raises a genuine issue of material fact regarding whether his exclusion from participation in

9  tryouts at PGHS was motivated by his disability.  Plaintiff testified District officials informed him

10  he could try out for the PGHS team, even though the coach had already selected the team.  PRDF

11  25 (citing Brown Dep. I at 119:21–121:05, 122:06–15 ("That I was cleared to do so, by Rod

12  Edmiston. And I was allowed to be able to try out, and – and all I had to do was just show up to

13  the practice."))  After Athletic Director Edmiston "cleared" plaintiff, plaintiff went to practice for

14  the PGHS varsity basketball team, where Coach Smith told him "to wait three days before they

15  made a decision," *id.* at 123:07–123:20, 124:09–125:12; after those three days plaintiff's mother

16  received an email stating PGHS would not allow him to try out, *id.* at 124:22–126:04; *see, e.g.*,

17  ECF No. 49-3 (sealed).

18          Plaintiff's deposition testimony creates a dispute regarding whether the District

19  excluded plaintiff from trying out to participate in PGHS's varsity basketball team because of his

20  disability.  The letter in response to plaintiff's mother describes the process by which

21  Superintendent Hoffman reviewed the information she provided, "specifically considered the

22  language in [her son's] January 13, 2016 IEP Addendum, and further discussed the District's

23  legal obligations to a child with a disability in the area of athletics with [his] Student Services

24  staff."  *Id.* at 58.  After this review, the District decided plaintiff's "IEP Addendum [did not]

25  require[] his participation on the team as a specific component of a Free Appropriate Public

26  Education."  *Id.*  Viewing all evidence and drawing "reasonable inferences" in favor of plaintiff

27  as the nonmoving party, the court finds there is a genuine issue regarding whether the District

28  /////

1  initially allowed plaintiff to try out for PGHS's team, but then changed course because of his

2  disability.  *Tolan*, 134 S. Ct. at 1868.

3          The court DENIES the District's motion for summary judgment of plaintiff's

4  claim the District violated the ADA and Rehabilitation Act when it did not allow him to try out

5  for the PGHS varsity basketball team.

6                     d)     Deliberate Indifference

7          The District argues it did not act with deliberate indifference because the record

8  shows plaintiff's qualifications, rather than his disability, prevented him from making the varsity

9  basketball team at each school he attended.  Mem. P. & A. at 21–22.  Plaintiff argues there are

10  triable issues of material fact as to whether the District acted with deliberate indifference to his

11  disability, based on deposition testimony from two coaches about their knowledge of plaintiff's

12  disability.  Opp'n at 21.

13          When seeking damages on ADA and Rehabilitation Act claims, a plaintiff must

14  demonstrate defendant's deliberate indifference, which "requires both knowledge that a harm to a

15  federally protected right is substantially likely, and a failure to act upon that likelihood."  *Duvall*

16  *v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (citing *City of Canton v. Harris*, 489 U.S.

17  378, 380 (1988)).  "[T]o meet the second element of the deliberate indifference test, a failure to

18  act must be a result of conduct that is more than negligent, and involves an element of

19  deliberateness."  *Id.* (citing *Bartlett v. New York State Board of Law Examiners*, 156 F.3d 321,

20  331 (2d Cir. 1998), *reversed on other grounds*, 527 U.S. 1031 (1999)).  This requirement is not

21  met where a "duty to act may simply have been overlooked, or a complaint may reasonably have

22  been deemed to result from events taking their normal course."  *Id.* (citing *Ferguson v. City of*

23  *Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)).

24          The District maintains it did not act with deliberate indifference because, in the

25  first place, plaintiff did not request accommodations for basketball and, moreover, because the

26  District utilized non-discriminatory selection criteria in determining whether plaintiff could

27  participate on the varsity basketball teams.  Mem. P. & A. at 21.  The District highlights

28  plaintiff's own deposition testimony, in which he states he neither required nor requested any

accommodations to participate in basketball.  DSDF 27 (citing Brown Dep. I 150:05–152:13 (plaintiff stating Coach Formaker at FHS did not "treat [him] any differently" during tryouts and his "learning disability didn't affect [] athletic capabilities to play basketball"); Brown Dep. II 283:10–19, 305:20 –306:01 (stating he did not need accommodations during summer league at COHS); *id*. at 312:08–12 (stating he did not request "any kind of assistance or accommodations" for tryouts with Coach Roth at COHS)).  To support its argument the coaches used non-discriminatory selection criteria, the District here as well points to declarations from each coach describing how plaintiff's performance at tryouts and skills informed their decisions to not place him on the team.  *See* DSDF 17 (citing Roth Decl. ¶¶ 2–6); *id.* 9 (citing Formaker Decl. ¶ 5).

With respect to deliberate indifference, plaintiff raises a genuine issue of material fact as well, while recognizing that deliberate indifference requires "more than negligent" conduct and imposes a more stringent standard than the "but-for" causation standard for other facets of an ADA claim.  Other testimony of coaches and school officials could lead a factfinder to conclude the District knew "that a harm to a federally protected right [was] substantially likely" because District representatives were aware of plaintiff's disability.  *See* Formaker Dep. at 10:16–19, 14:24–17:12 (discussing plaintiff's behavioral incidents and interactions with plaintiff's "special-education case manager, Mike Willis"); Roth Dep. at 9:03–07, 14:14–19 (discussing plaintiff's IEP, which he was aware of because he also taught plaintiff in Economics), 16:02–18, 19:13–25 (admitting awareness of plaintiff's behavioral issues and disability).  Plaintiff also raises a genuine dispute regarding the second element of a deliberate indifference claim, "failure to act upon that likelihood," by pointing to evidence of the District's awareness of alleged discrimination, especially after the tryouts at FHS, while making no effort to ensure plaintiff did not experience further discrimination.  Albiani Decl. Exs. 1, 2, 4 (plaintiff's mother's complaints during 2014-2015 school year); Edmiston Decl. Ex. 5 (plaintiff's mother's complaint following 2015-2016 school year).  Although Principal Albiani's investigation during the 2014-2015 school year concluded Coach Formaker did not discriminate against plaintiff, allegations within the complaint served to put the District on notice of the "likelihood" of discrimination.  Albiani Decl. ¶¶ 6–9.  Even after the investigation was complete, the District has not shown it took any action

1    to mitigate potential discrimination against plaintiff.  *See Lovell v. Chandler*, 303 F.3d 1039,

2    1057–58 (9th Cir. 2002) (in failing to alleviate impact of discrimination on individual with

3    disability, defendant acted with deliberate indifference).

4              The court DENIES the District's motion for summary judgment as to plaintiff's

5    deliberate indifference claim.

6         B.    Implementing Regulations of the Rehabilitation Act (Third Cause of Action)

7              Finally, the District argues plaintiff cannot prevail on his claim that the District

8    violated the implementing regulations of Section 504 of the Rehabilitation Act because the

9    coaches evaluated plaintiff on the basis of his "skills and abilities." Mem. P. & A. at 23 (citing

10   DSDF 6–11, 14–22, 27).  In opposition, plaintiff argues there are triable issues of material fact,

11   based on evidence showing "the District's manifest lack of investigation into whether Plaintiff

12   could be accommodated under Section 504 and the ADA."  Opp'n at 24.

13             Students have a private right of action against a school district they believe has

14   violated Section 504's "reasonable accommodation" and "meaningful access" implementing

15   regulations.  *Mark H. v. Lemahieu*, 513 F.3d 922, 937–38 (9th Cir. 2008).  In this case, plaintiff

16   brings his claim under both prongs of Section 504's implementing regulations, but the District

17   appears to focus on only the requirement of "meaningful access" to the school's programs.  Mem.

18   P. & A. at 23.  In opposing defendant's motion in this respect, plaintiff points to plaintiff's

19   mother's testimony, which he says supports the conclusion the District provided plaintiff with

20   neither reasonable accommodations nor meaningful access.  Opp'n at 22–23.  Given the scope of

21   defendant's motion, the court considers meaningful access under the Section 504 implementing

22   regulations below.[1]

23   _____

24   [1] To the extent defendant means also to include reasonable accommodations as a basis of its
     motion, the District does not meet its initial burden of showing there is no genuine factual dispute
25   regarding whether it failed to provide plaintiff with reasonable accommodations for his disability.
     The regulations require that districts "shall provide non-academic and extracurricular services and
26   activities in such manner as is necessary to afford handicapped students an equal opportunity for
     participation in such services and activities." 34 C.F.R.        § 104.37(a).  When an entity is on
27   notice of needed accommodations, it "is required to undertake a fact-specific investigation to
     determine what constitutes a reasonable accommodation." *A.G. v. Paradise Valley Unified Sch.*
28   *Dist. No. 69 ("A.G.")*, 815 F.3d 1195, 1207 (9th Cir. 2016) (citation omitted).  Here, although

1      With respect to physical education and athletics programs available to students,

2   districts "may not discriminate on the basis of handicap."  34 C.F.R. § 104.37(c)(1).  Instead,

3   districts "shall provide to qualified handicapped students an equal opportunity for participation."

4   *Id.*  To pursue a claim based on a meaningful access theory, a plaintiff must demonstrate a

5   violation of a Section 504 implementing regulation that "denied [him] meaningful access to a

6   public benefit."  *A.G.*, 815 F.3d at 1204 (citation omitted).

7      On this issue, the District argues it did not deny plaintiff meaningful access to the

8   varsity basketball program because it allowed him to participate in multiple tryouts, during which

9   coaches evaluated him on his skills and abilities.  Mem. P. & A. at 23 (citing DSDF 6–11, 14–22,

10  27).  As discussed above, however, evidence in the record could lead a factfinder to determine the

11  District may have not allowed plaintiff "meaningful access" to its varsity basketball teams

12  because of his disability.  Plaintiff has pointed to evidence showing his basketball skills qualified

13  him to play on these teams, and evidence supporting an inference the District considered

14  plaintiff's disability in ultimately not allowing him to make the team.  *See* Walker Dep. at 96:20–

15  100:06 (coach with 20-year career describing plaintiff's talent through plaintiff's participation in

16  his basketball organization, Showtime Hoops); Basped Dep. at 138:23–140:12 (describing his

17  basketball career, his observations of plaintiff at two camps for "the top kids in Northern

18  California" and plaintiff's qualifications for varsity basketball);  Brown Dep. II at 270:07–271:04,

19  271:19–273:16 (recounting Coach Formaker's "yelling and screaming and cussing" at plaintiff

20

---

21  plaintiff testified in his deposition he did not request a different tryout process because of his
    disability, the District is not relieved of responsibility when the District does not provide evidence
22  sufficient to show as a matter of law it undertook any "fact-specific investigation to determine
    what constitutes a reasonable accommodation."  *Id.*  Instead, District officials stated merely that
23  "accommodations and modifications could be provided based on individual needs" if plaintiff
    made the team.  Albiani Decl. ¶ 9; Phillips Decl. ¶ 5 ("[I]f Isaiah Brown made the team,
24  accommodations and modifications, including revisions to the operative BIP, could be provided
    based on individual needs.").  These statements, particularly those of Special Education Director
25  Phillips, only serve to demonstrate the District considered plaintiff's participation on the varsity
    basketball team through the framework of his IEP as opposed to "what constitutes a reasonable
26  accommodation" under the Section 504 implementing regulations.

27

28

during tryouts); *id.* at 303:10–304:13 (describing Coach Roth's calling him "Elijah throughout summer league" and how plaintiff "felt that he doing [sic] it to be disrespectful."). For these reasons, whether the District denied plaintiff "meaningful access" to varsity basketball presents a genuine dispute of material fact.

The court DENIES the District's motion for summary judgment of plaintiff's claim the District violated his right to "meaningful access" under the Section 504 implementing regulations.

IV.     CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is DENIED. A final pretrial conference is set for **March 26, 2021 at 10:00 a.m.** The parties SHALL meet and confer and file a joint status report 14 days prior to the final pretrial conference addressing matters the court should consider in setting a trial date. *See* E.D. L.R. 282. In the meantime, if the parties request referral now to another judge of the court for the purposes of a court-convened settlement before the final pretrial conference, they may file such a request in writing promptly and the court will make the referral. Additionally, if the parties jointly request a virtual trial that can be convened by videoconference, they should so advise the court with a description of their proposed trial procedures and the final pretrial conference may be advanced to an earlier date.

This order resolves ECF No. 49.

IT IS SO ORDERED.

DATED:  December 9, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE